IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANDRES MONTOYA,

        Plaintiff,

vs.                                                    No. **Civ-04-294 MCA/RHS**

ENMRSH, INC.,

        Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on *Defendant ENMRSH, Inc.'s Motion for Summary Judgment* [Doc. 16], filed November 29, 2004; *Defendant ENMRSH, Inc.'s Motion to Exceed Page Limits for Exhibits* [Doc. 21], filed December 10, 2004; *Plaintiff's Motion to Strike Defendant's 'Motion for Summary Judgment' and Memorandum in Support* [Doc. 22], filed December 15, 2004; Plaintiff's *Motion to Strike Summary Judgment Affidavits of Kirk Marshall and Robert Spencer and Memorandum in Support* [Doc. 24], filed December 16, 2004; and *Defendant ENMRSH, Inc.'s Motion to Strike Portions of Plaintiff's Affidavit* [Doc. 27], filed December 30, 2004. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants *Defendant ENMRSH, Inc.'s Motion for Summary Judgment* and *Motion to Exceed Page Limits for Exhibits*. The Court denies *Plaintiff's Motion to Strike Defendant's 'Motion for Summary Judgment' and Memorandum in Support* and *Motion to Strike Summary Judgment Affidavits of Kirk Marshall and Robert Spencer and Memorandum in Support*. Lastly, the Court grants

in part and denies in part *Defendant ENMRSH, Inc.'s Motion to Strike Portions of Plaintiff's Affidavit*.

## I. BACKGROUND

Defendant ENMRSH, Inc. is a nonprofit, 501(c)(3) charitable organization that provides a comprehensive community-based system of integrated services to physically and developmentally disabled individuals ("ENMRSH's consumers" or "consumers") in eastern New Mexico.  As part of its mission, ENMRSH provides its consumers with employment rehabilitation services in the form of job placement, job coaching, vocational assessment, transitional employment, and skills development training.  [Doc. 17 at 2].  In order to provide its consumers with job opportunities, ENMRSH has contracted with the United States Air Force to supply food and clean-up services at the Cannon Air Force Base Pecos Trail dining facility ("the Cannon dining facility").  Pursuant to the contract[1] with the Air Force, ENMRSH consumers operate the service line at the Cannon dining facility and clean the area after meals are served.  Consumers do their jobs under the supervision of job coaches and shift supervisors, who are ENMRSH employees.  [Id. at 2-3].  It is undisputed that the job of a shift supervisor includes watching out for such safety hazards as steam, knives, caustic chemicals, and water and food on the floor.  Because the shift supervisor is ultimately responsible for both the safety and actions of ENMRSH consumers and for the security of

---

[1]  For the terms of ENMRSH's contract with the United States Air Force regarding the Cannon dining facility see Doc. 18, Exh. 1, "Performance Work Statement for Food Service Attendant Contract."

2

the Cannon dining facility while ENMRSH consumers and employees are on site, the written job description for shift supervisors states that a "[s]upervisor is required to  remain on station during duty hours unless relieved by another supervisor."  [Doc. 19, Exh. 1, "ENMRSH, Inc. Job Description"].

Plaintiff Andres Montoya was employed by ENMRSH as a full-time shift supervisor from August 1999 until October 2000.  Because Montoya accepted a position as a mail carrier with the United States Postal Service in October 2000, he asked that ENMRSH allow him to work a part-time schedule.  As a part-time shift supervisor, Montoya normally worked one 10-hour weekly shift at the Cannon dining facility, Fridays from 6:00 p.m. until 4:30 a.m.  Montoya remained a part-time shift supervisor until his termination on July 2, 2003. [Doc. 17 at 3, 5; see also Doc. 18 at 3].

On March 15, 2004, Montoya, through counsel, filed his *Civil Complaint for Violation of 42 U.S.C. § 1981; and Breach of Implied Contract* [Doc. 1].  Montoya alleges that he was terminated because he is Hispanic, that he was at all times qualified to do his job, and that despite his qualifications he was discharged.  Montoya also alleges that ENMRSH's standard course of conduct created an implied contract of employment, the terms of which ENMRSH breached by terminating Montoya.  [Id. at 2-3].

ENMRSH has moved for summary judgment.  [Doc. 16].  According to ENMRSH, Montoya was terminated because he left the Cannon dining facility unsupervised to go hit golf balls, falsified his time sheets, and slept while on duty.  Even assuming that Montoya is able to establish a prima facie case for discrimination, submits ENMRSH, there is no

3

evidence to support the conclusion that its reasons for terminating him were pretextual. [Doc. 17 at 9-13]. ENMRSH also maintains that Montoya at all times was an at-will employee and therefore his contract claim fails as a matter of law. In the alternative, ENMRSH argues that even if Montoya could demonstrate the existence of a contract, ENMRSH did nothing to breach any terms thereof. [Id. 17-25].

Montoya does not dispute that he left the Cannon dining facility to hit golf balls during his lunch break, or that he did so without another supervisor being present. [Doc. 23 at 3]. He contends that his absence did not endanger ENMRSH consumers. [Id., "Other supervisors had left the building with only the job coaches remaining for up to twenty minutes at a time without incident on a continuous basis."]. Montoya challenges the allegation that he falsified his time sheets and explains that co-workers who reportedly witnessed him sleeping probably saw him with his feet propped up and his eyes closed as he watched television during one of his breaks. [Id. at 3-5]. Montoya argues that he has established his prima facie case of discrimination and that ENMRSH's reasons for terminating him must have been pretextual, since "ENMRSH . . . treated similarly situated white employees more leniently for violating rules of comparable seriousness." [Id. at 19]. Finally, and with respect to his breach-of-contract claim, Montoya asserts that his supervisor's assurances that he would continue to be employed by ENMRSH so long as he performed adequately were sufficient to modify his initial at-will employment and create an implied contract of employment. [Id. at 22-23].

4

## II. ANALYSIS

### A. The Parties' Other Pretrial Motions

In addition to the motion for summary judgment, the parties have filed various pre-trial motions to strike.  The Court addresses each motion in turn.

#### 1. *Plaintiff's Motion to Strike Defendant's 'Motion for Summary Judgment' and Memorandum in Support and Defendant ENMRSH. Inc.'s Motion to Exceed Page Limits for Exhibits*

Montoya moves to strike ENMRSH's summary-judgment motion on the ground that the motion is in violation of the Local Civil Rules of the District of New Mexico. Specifically, Montoya asserts that ENMRSH has violated Rule 7.1 by failing to notify opposing counsel that a motion for summary judgment would be filed, Rule 7.7 by filing a motion and memorandum in excess of 27 pages, and Rule 10.5 by including 99 pages of exhibits.  [Doc. 22 at 2].   ENMRSH responds that given the dispositive nature of its summary-judgment motion, it was entitled to presume Montoya's opposition thereto.

ENMRSH asks the Court to strike the certification page attached to its memorandum in support of its motion for summary judgment and consider the certification combined with that accompanying the summary-judgment motion.  Explaining that it inadvertently miscounted the number of pages of exhibits, ENMRSH also asks the Court to grant its motion to exceed the page limitation for exhibits.  [Doc. 25 at 4, 7].  Finally, ENMRSH submits that Montoya has suffered no prejudice from "any inadvertent technical violation[s]" and requests that the Court decide the parties' submissions on the merits.  [Id. at 5].

The Tenth Circuit has described the local rules as "primarily housekeeping rules

[whose] purpose is to facilitate operation of the court." <u>Hernandez v. George</u>, 793 F.2d 264, 266 (10th Cir. 1986).  District courts are granted wide discretion with respect to applying their local rules and "[c]onsiderable deference is accorded to the district courts' interpretation and application of their own rules of practice and procedure." <u>Smith v. Ford Motor Co.</u>, 626 F.2d 784, 796 (10th Cir. 1980) (*citing* <u>Martinez v. Thrifty Drug and Discount Co.</u>, 593 F.2d 992 (10th Cir. 1978)).  At least one other court within the District of New Mexico has expressly held that, notwithstanding a party's noncompliance with the local rules, equity dictates that the court decide the issues on the merits rather than dispose of the matter on procedural grounds.  <u>Marshall v. Columbia Lea Reg'l. Hosp.</u>, No. 99-1363, slip op. at 3-4, n.3 (D.N.M. June 18, 2002), *aff'd in part and rev'd and remanded in part*, 345 F.3d 1157 (10th Cir. 2003).  Additionally, the local rules explicitly provide that they "may be waived by a Judge to avoid injustice."  D.N.M. LR-Civ. 1.7.

Assuming without deciding that ENMRSH has in fact violated Rules 7.1, 7.5, and 10.5, the Court is not persuaded that Montoya has been prejudiced thereby or, if he was, that striking ENMRSH's summary-judgment motion is the appropriate remedy.  First, Montoya has not asserted—much less demonstrated—that he has been prejudiced by ENMRSH's failure to determine, prior to filing its motion for summary judgment, whether such a motion would be opposed.  <u>See</u> <u>Lies v. United States</u>, 1991 WL 214161 (D.N.M.1991) (waiving local rule to avoid injustice where, among other things, complaining party had not established prejudice resulting from opponent's late filing).  Although Montoya claims he "was surprised that the Motion was filed at all," [doc. 33 at 2], his surprise has not prevented

him from filing a response, which will be considered in its entirety by the Court.  [See Doc. 23].  Additionally, while Rule 7.1 states that the "[m]ovant [for summary judgment] must determine whether a motion is opposed[,]" D.N.M LR-Civ. 7.1(a), logic dictates that a summary-judgment motion will be opposed, since resolution of a meritorious motion disposes of the matter in the movant's favor.  Finally, the Court questions the extent of Montoya's "surprise," given that the Initial Pretrial Report in this case provided notice of ENMRSH's intent to file a motion for summary judgement.  [See Doc. 8 at 4, "Defendant intends to file a motion for summary judgment . . . ."].

Montoya next alleges that ENMRSH's summary-judgment motion and supporting memorandum violate Rule 7.7 in that their combined length exceeds the rule's 27-page maximum.  [Doc. 22 at 2].  ENMRSH appears to concede that its combined motion and memorandum total 28 pages.  However, because the 28th page merely certifies service of the memorandum and, under the Local Rules, it is the motion rather than the memorandum that requires proof of service, ENMRSH asks the Court to strike the 28th page and consider the memorandum's certification page combined with that of the motion.  As was the case with Rule 7.1, the Court does not believe that Montoya has either alleged or shown that he has been prejudiced by any violation of Rule 7.7.  Accordingly, given the Court's preference to decide motions submitted to it on their merits, the Court will waive compliance with Rule 7.7.  See D.N.M. LR-Civ. 1.7.

Montoya lastly asserts that ENMRSH has violated Rule 10.5 by filing 99 pages of exhibits.  [Doc. 22 at 1-2].  Local Rule 10.5 provides, in pertinent part, that "[e]xhibits to a

motion . . . must not exceed fifty (50) pages unless all parties agree otherwise." D.N.M. LR-Civ. 10.5. Conceding that it has attached 52 pages of exhibits to its summary-judgment motion, ENMRSH moves to exceed page limits for exhibits.[2] [Doc. 21; see also Doc. 25 at 5]. ENMRSH maintains, however, that the additional 47 pages of which Montoya complains comprise the separately filed affidavits of ENMRSH President and CEO Robert Spencer and ENMRSH Director of Community Employment Kirk Marshall and have been filed both in compliance with D.N.M. LR-Civ. 10.7 and pursuant to this Court's established practice. [Doc. 25 at 5; Doc. 34]. Montoya asserts that he did not submit additional depositions because he believed that Local Rule 10.5 precluded such a filing. He asks that if the Court denies his motion to strike ENMRSH's summary-judgment motion, then, in the interests of fairness, he be allowed to submit additional depositions by way of a surreply. [Doc. 33 at 4].

Because Montoya has not shown that he has been prejudiced as a result of the two additional exhibit pages that have been attached to ENMRSH's motion for summary judgment, the Court will grant ENMRSH's motion to exceed page limits. The Court also declines to strike the Spencer and Marshall affidavits. See D.N.M. LR-Civ. 10.7. Finally, under the circumstances, the Court rejects Montoya's request to submit additional deposition testimony by way of a surreply. See D.N.M. LR-Civ. 7.6(b); see also Lopez v. Garcia, 1998

---

[2] An earlier request directed to counsel for Montoya by counsel for ENMRSH, asking for leave to exceed the local-rule page limit by two pages, was rejected by counsel for Montoya. [See Doc. 21, Exhs. B, C].

WL 171841 (10th Cir. Apr 13, 1998) ("Whether to allow surreplies lies in the sound discretion of the district courts.").

### 2. Motions to Strike Affidavits or Portions Thereof

Both Montoya and ENMRSH move to strike opposing affidavits or portions thereof. [Doc. 24, 27]. Montoya moves to strike the summary-judgment affidavits of Kirk Marshall and Robert Spencer on grounds that (1) both affidavits contain inadmissible hearsay, (2) both affidavits refer to business documents for which no foundation has been laid or that have not been authenticated as business records, and (3) parts of Spencer's affidavit express inadmissible lay opinion evidence or are speculative. [Doc. 24]. ENMRSH moves to strike portions of Montoya's affidavit on grounds that the affidavit contains statements that (1) materially contradict Montoya's sworn deposition testimony, (2) constitute inadmissible hearsay, (3) are irrelevant and immaterial, and (4) lack proper foundation. ENMRSH asks the Court to strike eight paragraphs, or portions thereof, from Montoya's affidavit. [Doc. 27]. Montoya, on the other hand, asks that the Marshall and Spencer affidavits be stricken in their entirety. [See Doc. 24 at 3, "Wherefore, Plaintiff requests that the affidavits of Kirk Marshall and Robert Spencer be stricken from being considered by the Court . . . ."].

The Tenth Circuit has, on more than one occasion, "approved the district court practice of ignoring inadmissible portions of an affidavit, as an alternative to disregarding the entire affidavit." Cuenca v. University of Kansas, 101 Fed.Appx. 782, 786-787 (10th Cir. 2004); see also Jones v. Barnhart, 349 F.3d 1260, 1270 (10th Cir.2003). Indeed, given the difficulty in and impracticality of striking an entire affidavit, the Court instead may rely

9

on the declarations therein to the extent that they contain relevant and admissible material, while ignoring inadmissible and irrelevant statements.  Jones, 349 F.3d at 1270; see also Maverick Paper Co. v. Omaha Paper Co., Inc., 18 F.Supp.2d 1232, 1234-35 (D.Kan. 1998). Accordingly, the Court denies Montoya's motion to strike the Marshall and Spencer affidavits in their entirety and grants ENMRSH's motion to strike parts of Montoya's affidavit to the extent that inadmissible and/or irrelevant statements and statements that otherwise do not comply with Fed.R.Civ.P. 56(e) will be disregarded.  See Cuenca v. University of Kansas, 265 F.Supp.2d 1191, 1200 (D.Kan. 2003).

### B. *Defendant ENMRSH, Inc.'s Motion for Summary Judgment*

#### 1. Standard of Review

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is appropriate as a matter of law if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

## 2. 42 U.S.C. § 1981

Section 1981 of Title 42 of the United States Code provides, in pertinent part, that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The Tenth Circuit evaluates claims of discriminatory discharge brought pursuant to § 1981 by reference to the burden-shifting framework originally articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Perry v. Woodward, 199 F.3d 1126, 1134 (10th Cir. 1999). Under that framework, the plaintiff must first establish a prima facie case of discrimination. In order to establish a prima facie case, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) despite his qualifications, he was discharged; and (4) the position was not eliminated after the discharge. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1229 (10th Cir. 2000) (citing Perry, 199 F.3d at 1138). The burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its employment action. If the defendant is successful, the burden shifts back to the plaintiff to show that the articulated reason is pretextual. McDonnell Douglas Corp., 411 U.S. at 802-805.

The Court believes that Montoya has established a prima facie case of discrimination. ENMRSH does not dispute that Montoya is a member of a protected class. [Doc. 17 at 10]. Nor does ENMRSH appear to challenge Montoya's qualifications as a shift supervisor. [See

Doc. 26 at 8, describing ENMRSH as the entity that initially hired Montoya, brought him back after a layoff, promoted him to shift supervisor, and made special accommodations so that Montoya could work for both ENMRSH and the postal service]. There also is no dispute that Montoya was discharged.   Finally, both Robert Spencer and Kirk Marshall have confirmed that Montoya's position was not eliminated after his termination.  [See Doc. 18, Nov. 23, 2004 Affidavit of Robert B. Spencer at 3, ¶ 8 and Doc. 18,  Nov. 24, 2004 Affidavit of Kirk Marshall at 3, ¶ 9, "Since Plaintiff's termination, his duties as shift supervisor on the night shift have been assigned to Phillip Lattimer."].  The Court thus concludes that Montoya has satisfied his burden of establishing a prima facie case of discrimination.

The prima facie case having been established, the burden now shifts to ENMRSH to put forth "a facially nondiscriminatory reason for firing [Montoya]."  Kendrick, 220 F.3d at 1229-30.  ENMRSH maintains that Montoya was terminated because he jeopardized the safety of consumers and the workplace.  Specifically, ENMRSH contends that Montoya (1) left the Cannon dining facility grounds without first ensuring that another supervisor would be present in his absence, thus creating a risk to the health and safety of ENMRSH consumers; (2) slept while on duty; and (3) falsified his time cards.  [Doc. 16; Exh. 4, July 2, 2003 letter of termination from Diana Wike, Project Manager, to Andres Montoya; Doc. 17 at 5].  ENMRSH having proffered its reasons, the burden now shifts back to Montoya to demonstrate that ENMRSH's proffered reasons are pretextual, *i.e.*, unworthy of belief.  See Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

Pretext may be shown in any number of ways.  First, the plaintiff may put forth

12

evidence that the defendant's stated reason for the adverse employment action was false. The plaintiff may also show that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances. Finally, the plaintiff may demonstrate that the defendant acted contrary to an unwritten policy or contrary to company practice when making the complained-of employment decision. Kendrick, 220 F.3d at 1230. A plaintiff who opts to show that the defendant acted contrary to an unwritten company policy or contrary to company practice may show that he was treated differently from other similarly situated employees who violated work rules of comparable seriousness. Id. In short, pretext is demonstrated by a showing of "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (ADA case) (*quoting* Olson v. General Elec. Astrospace, 101 F.3d 947, 951-52 (3d Cir.1996)).

The Court has considered each of the above methods by which a plaintiff may show pretext and concludes that Montoya has failed to meet his summary-judgment burden on this point. With respect to showing that ENMRSH's stated reason for the termination was false, the Court first notes that even a mistaken belief may be a legitimate reason for an employment decision and, thus, is not necessarily evidence of pretext. Kendrick, 220 F.3d at 1231 (*quoting* EEOC v. Flasher Co., Inc., 986 F.2d 1312 n. 12 (10th Cir.1992)). In this case, however, Montoya was terminated because, among other things, he left the Cannon

13

dining facility grounds without authorization and without first ensuring that another supervisor would be present in his absence to supervise physically and developmentally disabled individuals; these actions in turn jeopardized the health and safety of these ENMRSH consumers.  [See Doc. 16; Exh. 4, July 2, 2003 letter of termination].  Montoya has consistently acknowledged that he left the Cannon dining facility to hit golf balls.  [Doc. 16, Exh. A, Sept. 9, 2004 deposition of Andres Montoya; Doc. 23 at 8 and Exh. 4, ¶ 9, Affidavit of Andres Montoya].  Yet he asserts that it was acceptable for him to have left the premises because (1) he was no more than a three-minute car drive away, (2) he had taken his cellular telephone with him, and (3) job coaches Emily Anaya and Claudia Garcia remained at the facility.  [Doc. 23 at 3 and Exh. 4].

Montoya was asked during his deposition to review a copy of his job description.  He did so, and stated that the job description accurately detailed what he understood his job duties to be.  [Doc. 16, Exh. A at 55].  Among other things, the job description for an ENMRSH shift supervisor provides that the "[s]upervisor is required to remain on station during duty hours unless relieved *by another supervisor*."  [Doc. 16, Exh. 2, ENMRSH, Inc. job description, ¶ 2 (emphasis added)].  As already explained, Montoya does not dispute that he left the Cannon dining facility without another supervisor being present.  Accordingly, the Court cannot conclude that ENMRSH's stated reason for terminating Montoya was false. See Kendrick, 220 F.3d at 1230.

Nor does the record support the conclusion that ENMRSH terminated Montoya in contravention of "a written company policy prescribing the action to be taken by [ENMRSH]

14

under the circumstances." <u>Kendrick</u>, 220 F.3d at 1230.  To the contrary, the ENMRSH employee handbook provides that the consequence for placing consumer health and/or safety at risk is discharge.  [Doc. 24, Exh. 2 at 46].  Moreover, advance notice is not given and discharge is immediate when an employee is terminated for cause.  [<u>Id.</u>].  The Court therefore is not persuaded that ENMRSH terminated Montoya contrary to written company policy.  <u>See</u> <u>Kendrick</u>, 220 F.3d at 1230.

Montoya lastly argues that his termination was effected contrary to unwritten policy and company practice because similarly situated white employees who violated work rules of comparable seriousness were not disciplined.  Specifically, Montoya asserts that Janie Tucker, a white supervisor, was not disciplined even though an ENMRSH consumer "was thrown in the trash on a continuous basis over a three year period, sometimes in front of his supervisor." [Doc. 23 at 19].  Montoya also submits that (1) other white managers, including John Braham and Janie Tucker, left the Cannon dining facility without being disciplined; his own supervisor, Diana Wike, engaged in constant racial and sexual hazing of Montoya without repercussion; and (3) Jennifer Crowder, another white supervisor, was not disciplined even though she approved subordinates' falsified time sheets.  [<u>Id.</u>; Doc. 23, Exh. 4 at 2, ¶ 16].

As an initial matter, the Court notes that, to the extent Montoya compares his situation to that of John Braham, Diana Wike, and Jennifer Crowder, any such comparison is not particularly helpful to a determination of pretext.  That is because, for purposes of showing pretext by demonstrating that similarly situated employees were treated differently,

15

"similarly situated employees" are those "who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997) (quotations omitted). With respect to John Braham, Montoya does not indicate whether he and Braham reported to the same supervisor or whether, as a manager, Braham was subject to the same work rules and standards as Montoya. Id. ("[The C]ourt should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated."). The same can be said for Diana Wike, whose title was Project Manager. Wike testified that, as a project manager, her duties differed from those of a supervisor in that she had greater authority and dealt directly with military personnel. [Doc. 23, Exh. 8, Sept. 10, 2004 deposition of Diana Wike, at 8]. While Jennifer Crowder was a supervisor, she was a job-coach supervisor, not a shift supervisor. [See id., Exh. 2, Oct. 29, 2004 deposition of Jennifer Crowder, at 48]. Again, the onus remains with Montoya to demonstrate that he and Crowder had essentially the same duties and responsibilities. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1171 (10th Cir. 1998) ("[W]e doubt that the mere similarity of job title is sufficient grounds to conclude that differential treatment . . . is pretextual.").[3]

---

[3]     Sometimes apparently irrational differences in treatment between different employees that cannot be explained on the basis of clearly articulated company policies may be explained by the fact that the discipline was administered by different supervisors, or that events occurred at different times when the company's attitudes toward certain infractions were different, or that the individualized circumstances surrounding the infractions offered some mitigation

Consequently, the Court concludes that of the co-workers to whom Montoya attempts to compare himself, Janie Tucker, another supervisor who was overseen by Diana Wike, is the only "similarly situated" employee for purposes of establishing pretext.  [See Doc. 23, Exh. 8, Sept. 10, 2004 deposition of Diana Wike, at 10-11].

According to Montoya, Janie Tucker, who is white, was not reprimanded after she left the Cannon dining facility.  [See Doc. 23, Exh. 4, Affidavit of Andres Montoya, at 2, ¶ 16].  Though Montoya alleges that Tucker "left the dining hall," [id.], he does not allege that she left the premises.  ENMRSH CEO and President Robert Spencer testified that it was permissible for employees to go outside the facility so long as they did not leave the premises.  [Id., Exh. 7, Sept. 10, 2004 deposition of Robert B. Spencer, at 16].  Even if Tucker had left the premises, Montoya has not demonstrated that she did so without ensuring that another supervisor was present.  [See Doc. 23 at 19].

Montoya further relies on the deposition testimony of Emily Anaya and Sam Herrera to show that Tucker was not disciplined even though she allowed an ENMRSH consumer

---

for the infractions less severely punished, or even that the less severely sanctioned employee may be more valuable to the company for nondiscriminatory reasons than is the other employee. Other times, no rational explanation for the differential treatment between the plaintiff and the comparison employees may be offered other than the inevitability that human relationships cannot be structured with mathematical precision, and even that explanation does not compel the conclusion that the defendant was acting with a secret, illegal discriminatory motive.

David v. City and County of Denver, 101 F.3d 1344, 1359-60 (10th Cir. 1996) (citing Flasher, 986 F.2d at 1320).

to be "thrown in the trash on a continuous basis." [Doc. 23 at 19]. Nothing in Anaya's testimony, however, supports the conclusion that Tucker was even at the scene of these alleged incidents. Instead, when asked, "Who was throwing [consumer Tommy Trujillo] in the dumpster?" Anaya responded, "[S]upervisors . . . Tweety [and] Dee." [Id., Exh. 1, Oct. 25, 2004 deposition of Emily Anaya]. While Sam Herrera testified that Tucker was the supervisor at the time of the alleged Trujillo episode, he also testified that it was military personnel who "horseplayed" with Trujillo. In response to the question, "And what exactly happened, if you can recall?" Herrera explained,

> I guess you got to kind of know Tommy.  Tommy is real outgoing and playful, he's always kind of pushing on people, and the military is always kind of playing back with him.
>
> And they simply just picked him up and put him on the trash can. I don't recall them dumping him in the trash can; I think putting him on the trash can.

[Doc. 23, Exh. 5, Nov. 11, 2004 deposition of Sam Herrera, at 50]. When asked how many times this sort of behavior occurred, Herrera responded, "I only saw it that one time I witnessed it." [Id.]. Herrera also denied hearing from others that the incident was ever repeated. [Id. at 50-51]. Having considered the record evidence, the Court is not persuaded that Montoya has established that a rational juror could conclude that Montoya was treated differently from nonminority, similarly situated ENMRSH employees who violated work rules of comparable seriousness. See Kendrick, 220 F.3d at 1220.

### 3. Breach of Implied Contract

ENMRSH also moves for summary judgment on Montoya's breach-of-implied-

contract claim.  According to ENMRSH, its employee handbook is not a contract and, even if it could be so construed, ENMRSH did not breach its provisions.  By contrast, submits ENMRSH, Montoya, who would be equally bound by any such contract, must be deemed to have breached its terms by failing to follow ENMRSH's specifically laid out grievance procedure regarding the reporting of workplace harassment.  [Doc. 17 at 17-25].  In response, Montoya maintains that his initial at-will employment relationship with ENMRSH was modified by Diana Wike's assurance that "as long as he did his job adequately, he would continue to be employed by ENMRSH, Inc."  [Doc. 23 at 23].  Montoya also asserts that the ENMRSH employee handbook specifically provides that employees be given advance prior notice of unsatisfactory work and the opportunity to correct the situation before termination. [Id.].

An at-will employee is one with no express agreement of employment and whose employment can be terminated with or without cause, unless the termination violates public policy.  See Lopez v. Kline, 953 P.2d 304, 306 (N.M.App. 1997); Newberry v. Allied Stores, Inc., 773 P.2d 1231, 1233 (N.M. 1989).  New Mexico is among those jurisdictions that are "willing to impose implied contractual duties based upon particular representations or conduct of an employer, without limitation to handbooks or manuals."  Kestenbaum v. Pennzoil Co., 766 P.2d 280, 284 (N.M. 1988).  Consequently, New Mexico courts recognize that an employer's oral statements may be sufficient to create an implied contract designating that an employee will not be terminated except for cause, *i.e.*, for a good reason.  Id.

The Court assumes without deciding that Wike's statement to Montoya—that he

would continue to be employed by ENMRSH so long as he did his job adequately—is sufficient to modify Montoya's initial at-will employment relationship.[4]  Even with the benefit of that assumption, however, Montoya's contract claim fails as a matter of law because the record evidence establishes that good cause existed for Montoya's termination. See Newberry, 773 P.2d at 1235 (holding that good cause existed to terminate employee who violated express term of employee handbook, which, in turn, was classified by employer as gross insubordination and flagrant violation of company policy and, as such, sufficient grounds for immediate dismissal).   As noted above, Montoya does not dispute that he left the Cannon dining facility grounds without confirming that a back-up supervisor (as opposed to two job coaches) would be present in his absence.  Montoya also testified that part of his job involved watching out for such safety hazards as steam, knives, caustic chemicals, and water and food on the floor.  [Doc. 16, Exh. A, Sept. 9, 2004 deposition of Andres Montoya, at 77-78].  By the express terms of the ENMRSH employee handbook, placing consumer health and safety at risk is cause for immediate dismissal.  [Doc. 24, Exh. 2 at 46].  Diana Wike's letter of termination to Montoya explained that he was being discharged for, among other things, placing consumer health and safety at risk.  [Doc. 16, Exh. 4].  Thus, even accepting Montoya's position that he could be terminated only for cause, the record evidence

---

[4]  In making this assumption, the Court also assumes without deciding that Wike occupied enough of a managerial position that her words and conduct could be imputed to ENMRSH under the general common law of agency.  See E.E.O.C. v. Gaddis, 733 F.2d 1373, 1380 (10th Cir.1984) (holding that authority to "hire, fire, discipline or promote, *or at least to participate in or recommend such actions*," is an indicium of supervisory or managerial capacity) (emphasis added).

establishes that such cause existed.

## III. CONCLUSION

The Court concludes that ENMRSH is entitled to judgment as a matter of law in this matter, as there exist no genuine issues of material fact with respect to Montoya's 42 U.S.C. § 1981 and breach-of-implied-contract claims. Accordingly, summary judgment will be entered in favor of ENMRSH.

**IT IS, THEREFORE, ORDERED** that *Defendant ENMRSH, Inc.'s Motion for Summary Judgment* [Doc. 16]is **GRANTED**;

**IT IS FURTHER ORDERED** that *Defendant ENMRSH, Inc.'s Motion to Exceed Page Limits for Exhibits* [Doc. 21] is **GRANTED**;

**IT IS FURTHER ORDERED** that *Plaintiff's Motion to Strike Defendant's 'Motion for Summary Judgment' and Memorandum in Support* [Doc. 22] is **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's *Motion to Strike Summary Judgment Affidavits of Kirk Marshall and Robert Spencer and Memorandum in Support* [Doc. 24] is **DENIED**;

**IT IS FURTHER ORDERED** that *Defendant ENMRSH, Inc.'s Motion to Strike Portions of Plaintiff's Affidavit* [Doc. 27] is **GRANTED IN PART** and **DENIED IN PART**.

**SO ORDERED** this 28th day of March, 2005, in Albuquerque, New Mexico.


**M. CHRISTINA ARMIJO**
United States District Judge